UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENNIS KELVIN BROWN,

    Petitioner,

Case No. 2:18-cv-11757

HONORABLE STEPHEN J. MURPHY, III

v.

GREG SKIPPER,

    Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS

Petitioner Dennis Kelvin Brown petitioned the Court for a writ of habeas corpus under 28 U.S.C. § 2254. ECF 1. Petitioner, who is proceeding through counsel, challenged his second-degree murder conviction. *Id.* at 1. The petition sought relief on the grounds that the trial court erred in denying Petitioner's request for substitute counsel, that trial and appellate counsel were ineffective, and that the trial court erred in denying Petitioner's motion to withdraw his plea. *Id.* at 3–7. Respondent argued that Petitioner's ineffective assistance of trial counsel claim is procedurally defaulted and that all his claims are meritless. ECF 4, PgID 113–15. For the reasons below, the Court will deny habeas corpus relief and a certificate of appealability.

### BACKGROUND

Petitioner was charged in Wayne County Circuit Court with second-degree murder for the death of Brandon Adams. ECF 1-3. On March 25, 2013, Petitioner pleaded no contest to the charge of murder in the second degree with an agreement that he would be sentenced within the sentencing guidelines. ECF 5-7, PgID 310.

1

During the plea hearing, the parties also stipulated to the use of the preliminary examination transcript to serve as the factual basis for the plea. *Id.* at 312–13.

The preliminary examination transcript includes the testimony of Erin Wentz who lived on Avon Street in Detroit with her boyfriend, Brandon Adams. ECF 5-2, PgID 177. In September 2012, Petitioner, his girlfriend, and their infant son moved into Wentz and Adams's house and agreed to pay rent to live there. *Id.* Eventually, a disagreement developed when—according to Wentz—Petitioner failed to pay rent. *Id.* at 183. Then, on November 4, 2012, Wentz and Adams's friends came over, and were informed of the rent dispute, and those friends then went upstairs and took the door off the bedroom where Petitioner and his girlfriend were staying. *Id.* at 187–88. Petitioner was told the door would be put back on only when the rent was paid. *Id.* at 188. That same evening, Petitioner had a discussion with Adams in his bedroom, which ended with a fist fight and Adams on the floor. *Id.* at 187, 190–91. Wentz testified that she saw Petitioner stomp on Adams's head at least ten times while Adams was on the ground. *Id.* at 181. Wentz saw blood "gushing" from Adams's head and called the police. *Id.* at 181, 198. When Petitioner finished beating Adams, he told his girlfriend to grab the baby and all three fled the home. *Id.* at 198.

The preliminary examination also included the testimony of Dr. Kilak Kesha, a Wayne County medical examiner who performed an autopsy of Brandon Adams. *Id.* at 218. Dr. Kesha determined the cause of death to be blunt force injuries to the head and determined the manner of death was homicide. *Id.* at 222.

2

Based on the testimony and plea, the trial court sentenced Petitioner to twenty-five to fifty years of imprisonment. ECF 5-8. Petitioner then applied for leave to appeal in the Michigan Court of Appeals claiming that trial counsel was ineffective and that his sentence rested on inaccurate information. The Michigan Court of Appeals denied leave to appeal "for lack of merit in the grounds presented." *People v. Brown*, No. 319716 (Mich. Ct. App. Mar. 18, 2014). The Michigan Supreme Court also denied leave to appeal. *People v. Brown*, 497 Mich. 946 (2014).

Petitioner also filed a motion for relief from judgment in the trial court. He raised three claims: (i) representation by unwanted counsel created a jurisdictional defect; (ii) Petitioner's plea was rendered involuntary by counsel's ineffectiveness; and (iii) appellate counsel was ineffective. The trial court denied the motion. *See People v. Brown*, No. 12-011332-01-FC (Dec. 9, 2016); ECF 5-13. The Michigan Court of Appeals again denied leave to appeal, *People v. Brown*, No. 336865 (Mich. Ct. App. Apr. 3, 2018), as did the Michigan Supreme Court, *People v. Brown*, 501 Mich. 1035 (2018).

Then, before this Court, Petitioner filed the present habeas corpus petition through counsel. In this petition he raises four claims: (I) refusal to conduct hearing on substitution of appointed counsel and forced continuation of representation constituted a structural error; (II) Petitioner's plea was invalid because it stemmed from ineffective counsel who did not investigate preparing a defense or seek a *Cobbs* agreement; (III) Petitioner was prejudiced by ineffective appellate counsel which satisfies good cause to permit review of Petitioner's issues on the merit to determine

3

prejudice; and (IV) the failure to set aside the plea and hold an evidentiary hearing violated the Fourteenth Amendment due process protections and entitles Petitioner to an evidentiary hearing in this Court. ECF 1.

## LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs review of the present case. Under AEDPA, a state prisoner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decision but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413). "In order for a

4

federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous . . . . The state court's application must have been 'objectively unreasonable.'" *Id.* at 520–21 (internal citations omitted); *see also Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court when the state court renders its decision. *See Greene v. Fisher*, 565 U.S. 34, 38 (2011). Section 2254(d) "does not require citation of [Supreme Court] cases—indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (emphasis in original).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Id.*

## DISCUSSION

I. <u>Substitution of Counsel Claim</u>

First, Petitioner claims there was an alleged breakdown in the attorney-client relationship. He argues that the trial court's failure to remove unwanted counsel was

5

the equivalent of a complete denial of counsel, constituted a structural defect, and that the trial court's failure to inquire into the apparent breakdown violated Petitioner's Sixth Amendment rights. ECF 1, PgID 3. Further, Petitioner argues that the last reasoned state court opinion denying this claim—the trial court's decision denying Petitioner's motion for relief from judgment—rested its decision on an unreasonable determination of the facts. ECF 6, PgID 793.

The trial court denied these claims, holding in relevant part:

The defendant claims this court's failure to appoint new trial counsel or make a probing inquiry into the adequacy of the representation constitutes a jurisdictional defect and entitles the defendant to bypass the requirement under M.C.R. 6.508(D)(3) to show good cause and actual prejudice.

Defendant Brown relies on *People v Carpentier*, 446 Mich 19 (1994) in support of his jurisdictional defect claim. This court finds the reliance on *Carpentier*, supra to be misplaced. In *Carpentier*, the Michigan Supreme Court found a jurisdictional defect in the trial court's sentencing consideration of juvenile adjudications in which the juvenile had no legal counsel at all.

In the present case, defendant Brown was represented by experience[d] legal counsel throughout all stages of the proceedings. Additionally there was no indication on the record of any breakdown in the attorney/client relationship. There was difficulty in the defendant understanding and more importantly accepting the law of "defense of others" and why this court would not give such an instruction to a jury based upon the facts of this case. For these reasons, defendant's claim of a jurisdictional defect fails.

ECF 5-13, PgID 471–72.

As an initial matter, the Court must consider the appropriate standard of review. Because Petitioner's claims were adjudicated on the merits in the state courts, if the state court's adjudication was based on "an unreasonable determination

6

of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d), then AEDPA's deferential standard of review would not apply and the Court would review the claim de novo. *Walter v. Kelly*, 653 F. App'x 378, 391 (6th Cir. 2016). Here, Petitioner argues no deference applies because, as Petitioner sees it, it was unreasonable for any court to conclude that the state trial court was not on notice of the fractured attorney-client relationship. Petitioner believes that the state court had notice in two ways:

First, Petitioner references and attaches to the present petition a copy of a handwritten letter, dated February 20, 2013, in which Petitioner complains about his counsel's performance and requests new counsel. ECF 1-9, PgID 90–93. But the record fails to show whether this letter was mailed to or received by the state court. Instead, Petitioner states that the record shows that during the March 1, 2013 hearing "the trial court's awareness and acknowledgment of the letter at the beginning of the proceedings . . . " proves that the state trial court was aware of the new attorney request. ECF 1-1, PgID 23–24, (citing ECF 5-4, PgID 255–59). But the cited transcript does not support Petitioner's argument. The only letters referenced during the motions hearing were written by Petitioner to defense counsel, and not to the state court. ECF 5-6, PgID 284–85.

Second, Petitioner cites a motion hearing held on March 1, 2013, during which defense counsel made the following remarks:

> I want to report to the Court that I have seen Mr. Brown several times at the Wayne County Jail. I have formed an opinion about him and expressed to the Court and in front of him that I find him to be an honest

7

> and fair and articulate person, who has an honest belief in the position that he thinks he has.
>
> However, that honest belief is so ironclad and so firmly ensconced on him that he would not either allow me to discuss what I need to discuss with him because he's so righteously indignant about what his belief are of the case.
>
> That the discussions between Mr. Clark and I to resolve this case don't penetrate, or they don't come through, or I'm not able to articulate. And I don't think anybody would be able to articulate them to him because of this seemingly impenetrable shield that he has to the point Judge, that I am almost now asking, and I do it on the record and in front of my client for the possibility of a referral for an examination of Mr. Brown to see if there are any underlying problems that he may be having that I don't know or am not capable of understanding and reporting upon to this Court to help, in this case to help himself.

ECF 5-4, PgID 256–57. In the colloquy that followed, Petitioner's counsel expressed concern about his mental abilities rather than their relationship. *Id.* at 257–59.

This record fails to show that the trial court's holding that "there was no indication on the record of any breakdown in the attorney/client relationship" was an unreasonable determination of the facts. ECF 5-13, PgID 471. Although a different factfinder may have reached a different conclusion, Petitioner fails to present "clear and convincing evidence" to rebut the presumption of correctness afforded the state court's factual determination. 28 U.S.C. § 2254(e)(1). Accordingly, the Court applies AEDPA's deferential standard of review.

Petitioner argues that structural error occurred when the trial court failed to inquire about the nature of the breakdown in the attorney-client relationship and he maintains that this amounted to the complete deprivation of counsel. But neither defense counsel nor Petitioner requested substitute counsel during the March 1, 2013

hearing. And, even if the colloquy were interpreted by this Court as a request for substitute counsel, relief is not warranted. There is no clearly established Supreme Court precedent requiring a trial court to inquire into the basis for a defendant's dissatisfaction when a defendant requests new counsel. *Akins v. Easterling*, 648 F.3d 380, 397 (6th Cir. 2011) (citing *Morris v. Slappy*, 461 U.S. 1, 14 (1983)). Thus, a state trial judge's failure to inquire into a habeas petitioner's complaints against counsel before denying a motion for substitution of counsel does not, by itself, entitle the petitioner to habeas relief. *See James v. Brigano*, 470 F.3d 636, 643 (6th Cir. 2006) (reversing a grant of relief because the inquiry requirement was not clearly established federal law). Petitioner may only succeed on this substitution of counsel claim by showing "that the refusal to appoint new counsel resulted in a denial of effective assistance of counsel . . ." *Peterson v. Smith*, 510 F. App'x 356, 366–67 (6th Cir. 2013). As discussed below, Petitioner fails to establish constitutionally ineffective assistance of defense counsel because he is unable to establish that he was prejudiced by the trial court's failure to appoint substitute counsel.

Finally, Petitioner's claim of structural error is meritless. The Sixth Amendment guarantees the right to counsel of choice for "a defendant who does not require appointed counsel," and the denial of counsel of choice in that situation results in structural error. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006) (citing *Wheat v. United States*, 486 U.S. 153, 159 (1988)). Petitioner's attorney was court-appointed. Because the right to counsel of choice has not been extended to indigent defendants who are represented by court-appointed counsel, he does not

establish structural error. For these reasons, Petitioner's habeas petition fails on this first ground.

II.     Ineffective Assistance of Counsel

In his second claim, Petitioner argues that his guilty plea is invalid because it was the result of his counsel's ineffectiveness. Specifically, he argues that counsel was ineffective because he failed to investigate and prepare a defense, and failed to seek a *Cobbs* agreement prior to the plea. Respondent argues that this claim is procedurally defaulted.

Because procedural default ordinarily is not a jurisdictional matter, "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). In some cases, it may be more economical for the habeas court to simply review the merits of the petitioner's claims rather than to address "complicated issues of state law." *Lambrix*, 520 U.S. at 525. In the present case, the Court finds it more efficient to proceed directly to the merits of the claim.

To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish both that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In guilty plea cases, the "performance" prong requires showing that defense counsel's representation fell below an "objective standard of reasonableness" or was outside the range of competence demanded of

10

attorneys in criminal cases, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Hill v. Lockhart*, 474 U.S. 52, 56–59 (1985). The "prejudice" prong in turn "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id.* at 59. The petitioner must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

    A.    *Failure to Investigate*

First, Petitioner claims that defense counsel was ineffective for failing to investigate and prepare a defense. ECF 1-1, PgID 36–41. He maintains that the medical examiner's testimony at the preliminary examination confirmed Petitioner's version of events, that is, that the victim died from a head injury sustained when he accidentally fell from the bed and his head struck either the hardwood floor or a bedside table. *Id.* Petitioner argues that defense counsel failed to consult with a pathologist to contest the medical examiner's testimony and that such a consultation would have provided a substantial defense against the charges. *Id.*

Petitioner raised this claim for the first time on state court collateral review. And the state trial court denied this claim. ECF 5-13. Although the trial court did not specifically explain the denial of this portion of Petitioner's ineffective assistance of counsel claim, the decision is still entitled to AEDPA deference. *See Harrington*, 562 U.S. at 99–100.

11

Petitioner's argument that the medical examiner's testimony confirmed his version of events is not supported by the record. Although the testimony may have aligned with Petitioner's statement that he stomped the victim's arms because abrasions were found on one of the victim's arms, the testimony did not support a defense that Petitioner stomped *only* on the victim's arms. The medical examiner's testimony also did not necessarily support Petitioner's argument that the victim died by striking his head on the floor or bedside table because the medical examiner testified that the autopsy indicated that the victim suffered *multiple* impacts to the head, and that the injuries suggested a "stomping-type of assault." ECF 5-2, PgID 219, 221.

Next, Petitioner's argument that defense counsel should have consulted with an expert prior to the preliminary examination is conclusory. A habeas petitioner's claim that trial counsel was ineffective for failing to consult or call an expert witness cannot be based on speculation. *Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007). Petitioner presents no evidence that an expert witness would have been willing to testify in a manner favorable to the defense. Absent such proof, Petitioner is unable to establish that he was prejudiced by counsel's failure to consult or call an expert witness. *Id.* at 557 (rejecting petitioner's ineffective-assistance claim arising from counsel's failure to call a particular witness because the petitioner "offered no evidence, beyond his assertions, to prove what the content of [the witness's] testimony would have been"). *See also Burt v. Titlow*, 571 U.S. 12, 23 (2013) ("It should go without saying that the absence of evidence cannot overcome the 'strong presumption

that counsel's conduct [fell] within the wide range of reasonable professional assistance.'") (quoting *Strickland*, 466 U.S. at 689).

Finally, Petitioner raises a general claim that counsel failed to prepare for trial and that this was the reason he pleaded guilty. The record shows that counsel advised Petitioner that the chances of success at trial were tenuous at best and the trial court's pretrial rulings did not help the defense. Counsel's strategy in pursuing a plea was reasonable given the charges against Petitioner, the evidence of guilt presented at the pretrial proceedings, and the uncertainties of trial. Moreover, Petitioner is bound by the statements he made at his plea hearing that he was not pressured or forced to enter a plea. *See Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999).

There is nothing in the state courts' determination of this issue that is contrary to, or an unreasonable application of, *Strickland* or *Hill*. Moreover, as explained above, the state court's factual determinations regarding the issue are well-grounded in the record. Accordingly, Petitioner is not entitled to habeas relief on this claim.

### B. *Failure to Request* Cobbs *Evaluation*

Next, Petitioner argues that counsel was ineffective for failing to request an evaluation under *People v. Cobbs*, 443 Mich. 276 (1993). ECF 1-1, PgID 42–47. In *Cobbs*, the Michigan Supreme Court held that where a judge preliminarily agrees to a particular sentence as the basis for a defendant's entry of a plea, the defendant must be given an opportunity to withdraw his plea if the subsequent sentence exceeds the preliminary evaluation. *Id.* at 283. Petitioner contends that if a *Cobbs* agreement

13

had been undertaken, he would have either received a lower minimum sentence or proceeded to trial.

Petitioner was informed before entering his plea that his sentencing guidelines had not yet been determined and acknowledged that there was no sentencing agreement. There is no constitutional right to a *Cobbs* evaluation and under Michigan law, a trial court is free to "decline to utilize the rarely used procedure outlined in *Cobbs* and there are strategic reasons not to seek the procedure." *People v. Thompson*, No. 187783, 1997 WL 33353798, at *1 (Mich. Ct. App. 1997). Petitioner fails to overcome the presumption that counsel's decision to not seek a *Cobbs* evaluation was a strategic one.

III. Appellate Ineffective Assistance of Counsel

Petitioner next argues that his appellate counsel was ineffective in failing to raise on direct review the claims raised in the pending habeas petition. ECF 1-1, PgID 48–52. The Sixth Amendment guarantees a defendant the right to effective assistance of counsel on the first appeal by right. *See Evitts v. Lucey*, 469 U.S. 387, 396–97 (1985). But a defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). The Supreme Court has explained that "[f]or judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy . . . ." *Id.* at 754. And further that "[n]othing in the Constitution or our interpretation of that document requires such a standard." *Id.*

14

As a result, strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

Because the Court has determined that Petitioner's underlying ineffective assistance of defense counsel claims lack merit, appellate counsel was not ineffective for failing to include them on direct review. Counsel is not ineffective for failing to raise a meritless claim on direct review. *Bennett v. Brewer*, 940 F.3d 279, 286 (6th Cir. 2019).

IV. <u>Denial of Motion to Set Aside Plea</u>

Finally, Petitioner argues that the trial court violated his due process rights by denying his request to withdraw his plea and by failing to hold a hearing on his plea withdrawal motion or on his claim of ineffective assistance of counsel. ECF 1-1, PgID 53–57.

Petitioner's claim that the state court failed to hold an evidentiary hearing on his ineffective assistance of counsel claim is an issue of state law that is not cognizable on federal habeas review. *See Hayes v. Prelesnik*, 193 F. App'x 577, 584 (6th Cir. 2006) (explaining that there is "no Supreme Court precedent indicating that a defendant has a constitutional right to an evidentiary hearing in state court to develop his claim of ineffective assistance of counsel on appeal"). His claim that the trial court improperly failed to hold a hearing on his motion to withdraw a plea is also not cognizable because there is no constitutional right to a hearing for a motion to

15

withdraw a plea. *See Armstrong v. Wainwright*, No. 19-3446, 2019 WL 5874623, at *2 (6th Cir. 2019).

Nor is there an independent federal constitutional right to withdraw a plea that is voluntarily and intelligently entered. *See Carwile v. Smith*, 874 F.2d 382, 385 (6th Cir. 1989). Here, before accepting the plea, the trial court engaged in a colloquy with Petitioner and advised him of the rights he was giving up by pleading no contest, advised him of the terms of the plea agreement, ascertained that no promises had been made, and that no one had threatened him to force him to enter the plea. ECF 5-7, PgID 310–12. And Petitioner represented that he understood the terms of the plea agreement. *Id.* at 312.

Petitioner also fails to show that the state court's rejection of this claim was contrary to or an unreasonable application of Supreme Court precedent. In denying Petitioner's motion to withdraw his plea, the trial court observed that Petitioner understood the terms of the plea agreement and that the plea was knowingly and voluntarily entered. *Id.* The record fully supports this conclusion and there is no evidence that Petitioner was pressured into entering a plea or that he did not understand the consequences of his plea. Habeas relief is unwarranted on this claim.

V.  Certificate of Appealability

To appeal the Court's decision, Petitioner must obtain a certificate of appealability. To do so, a petitioner must make a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). Thus, Petitioner must show that reasonable jurists could debate whether the petition should have been resolved in a

16

different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Here, jurists of reason would not debate the Court's denial of these claims and therefore, the Court denies a certificate of appealability.

### ORDER

**WHEREFORE**, it is hereby **ORDERED** that Petitioner's petition for a writ of habeas corpus [1] is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner is **DENIED** a certificate of appealability.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: May 18, 2021

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 18, 2021, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager